IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM DENIS McCANN,                    )
                                         )
               Petitioner,               )        No. C 07-3865 JSW (PR)
                                         )
     vs.                                 )        ORDER DENYING PETITION
                                         )        FOR A WRIT OF HABEAS
LIONEL CHATHAM, Chief                    )        CORPUS
Probation Officer, Contra Costa          )
Probation Department,                    )
                                         )        (Docket No. 20)
               Respondent.               )
_____)

## INTRODUCTION

William McCann, a California probationer currently living in Genoa, Nevada, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court ordered Respondent to show cause as to why three claims raised in the petition should not be granted. Respondent filed an answer and Petitioner has filed a traverse, as well as an amended traverse. For the reasons set forth below, Petitioner's motion seeking to strike the answer and for entry of default is DENIED (docket no. 20). This order denies the petition for a writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

Petitioner was convicted of a felony after a bench trial in Contra Costa County Superior Court pursuant to a 'slow plea agreement' of filing a false tax return on April 7, 2005. He was sentenced to 180 days in county jail and five years probation on May 13, 2005.

Petitioner appealed his conviction to the California Court of Appeal, First

District, which affirmed the conviction in an unpublished, reasoned opinion filed May 22, 2006.  Petitioner petitioned for review to the California Supreme Court on only one of the three grounds raised in his appeal to the Court of Appeal.  On August 2, 2006, the California Supreme Court denied review.

On July 27, 2007, Petitioner filed a petition for habeas relief with this Court. The petition was dismissed with leave to amend on the grounds that two of the four claims raised were not exhausted in the state courts.  Petitioner filed the instant amended petition on January 18, 2008, raising the same three claims he had raised in the Court of Appeal.

## FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> The criminal charges against defendant arose out of his involvement with the Belasco Theatre Company (BTC), a non-profit organization founded by Edward Belasco (Belasco).  BTC is devoted to introducing theater arts to children, and defendant first became involved with it in 1988, when his daughter enrolled in a BTC drama class; in the early 1990s, he became president of the BTC Board of Directors.

> Over the years, BTC experienced frequent difficulty in locating adequate performance space, and Belasco asked defendant for help in locating suitable alternatives.  In 1996, defendant learned of property located at 500 La Gonda Way in Danville (the Property), which was owned by Sid Corrie (Corrie), a local land developer.  Corrie had recently failed in his attempt to obtain commercial zoning for the Property, which was zoned residential and contained a single-family dwelling, and defendant was advised that Corrie might be willing to sell it for a low price.  Defendant conceived a plan to subdivide the Property, and build a non-profit community theater on one portion of it and a for-profit commercial office building on the other.  In defendant's mind, the commercial component would be necessary to generate the income to finance the theater's construction and operation.

> Defendant and Gordon Bingham (Bingham), a businessperson and long-time personal friend of defendant, formed a partnership, Bingham-McCann, for the sole purpose of developing the theater project. Bingham-McCann negotiated with Corrie for approximately a year over the purchase of the property.  On December 23, 1997, the parties entered into a final purchase contract which provided that Corrie would donate an undivided 58.33 percent interest in the Property to BTC, in exchange

for which Corrie would receive a charitable deduction of $ 1.96 million, and that Corrie would sell the remaining 41.66 percent interest to Bingham-McCann for $1.4 million.[1]  The deal was contingent upon Bingham-McCann obtaining the financing for its portion of the Property and Corrie receiving the agreed-upon tax deduction.  Corrie conveyed the portion to BTC on December 31, 1997,[2] and conveyed the remaining portion to Bingham-McCann on February 18, 1998, after the contingencies had been met.

Complications arose during the period of finalizing the purchase.  Bingham-McCann had applied to the City of Danville for entitlements, and was told that the theater and office building had to be built concurrently and physically linked together.  Further, Mount Diablo National Bank, on whose Board of Directors Bingham and defendant both served and which financed Bingham-McCann's $1.4 million purchase of its interest in the Property, would not lend to a non-profit organization.  The bank also required title unification to perfect its collateral interest in the parcel as a whole.

Defendant proposed to solve these problems by having BTC transfer its interest in the Property to Bingham-McCann, and the manner in which this transfer occurred was the subject of contradictory testimony.  According to Belasco, who was legally blind and had difficulty reading documents, defendant showed up unexpectedly at Belasco's home late in the evening on December 31, 1997, New Year's Eve, told Belasco he was trying to get the process of building a theater under way, and requested that Belasco sign some papers.  Belasco testified that he signed the papers without reading them because he trusted defendant.  The papers included a memorandum confirming BTC's consent to the transfer of its interest in the Property to Bingham-McCann.  According to Belasco, defendant never told him that Corrie had donated property valued at $1.96 million to BTC.

Defendant testified that he did not go to Belasco's house on December 31, 1997, but approximately one week earlier; he also claimed that he told Belasco about the Corrie donation.  According to defendant's testimony, he explained to Belasco that in order for Bingham-McCann to construct the theater, BTC would have to sign over title of the Property in its entirety to Bingham-McCann.  He advised Belasco that in exchange for the transfer, BTC would have the first right of use of the theater for up to 36 performances each year and would receive a discounted rental rate, an arrangement, he testified, that would last for as long as Belasco remained the artistic director of BTC.  According to defendant, these

---

[1] Corrie originally agreed to donate the portion to BTC in exchange for a charitable deduction of $1.8 million.  The property appraised for a higher value than expected, and Corrie's charitable deduction was increased to $1.96 million.

[2] Corrie testified that he signed the Grant Deed on December 29, 1997, but a deed was recorded on December 31, 1997.

3

terms were detailed in a memorandum that defendant thoroughly explained to Belasco prior to Belasco signing the document. The deed conveying the BTC portion of the Property to Bingham-McCann was recorded on February 18, 1998.

In 1999, Bingham and defendant created two additional entities: the Mount Diablo Foundation for the Arts, a non-profit corporation, to oversee the fundraising for construction of the children's theater, and 500 La Gonda Associates, a limited partnership, to finance the construction of the office building. Construction commenced in August 1999, and by early 2001, the office building and the shell for the theater had been completed.

At some point during the construction process, Corrie became suspicious when he drove by the property and saw that the office building was occupying what appeared to be 70 percent of the Property, rather than the roughly 40 percent Bingham-McCann had purchased from him; he further discovered that the dimensions of the office building would be more than twice as large as had been represented to him. The Internal Revenue Service had also disallowed Corrie's $1.96 million deduction because there was no benefit to BTC.[3] Corrie subsequently learned that the portion of the Property he donated to BTC had been transferred to Bingham-McCann at no cost.

In early 2001, Corrie filed a lawsuit against Bingham-McCann, alleging that defendant had solicited Corrie's $1.9 million donation to BTC but then had fraudulently conveyed the property to himself at no cost. Many other parties joined the lawsuit, including BTC and the Attorney General. Bingham and defendant eventually contributed in excess of $4 million to settle the civil lawsuit.

Meanwhile, during the pendency of the civil lawsuit, Corrie lodged fraud complaints against defendant and Bingham with the Alameda County District Attorney's Office which assigned retired Captain (then Lieutenant) John Lovelady (Lovelady) to conduct a criminal investigation. While investigating the transfer of the BTC's interest in the Property to Bingham-McCann, Lovelady also examined defendant and Bingham's 1997 tax returns. On Bingham's return, he had claimed a $250,000 charitable deduction based on the purported donation of the single-family dwelling at 500 La Gonda Way to BTC. Bingham had executed a grant deed transferring the dwelling, but the deed was never recorded. On behalf of BTC, defendant had written a letter to Bingham, acknowledging a $250,000 contribution from Bingham to BTC in 1997.

As for defendant's 1997 tax return, he had initially claimed a charitable contribution to BTC of approximately $76,000. According to defendant, this figure represented one-half of Bingham-McCann's expenditures on the theater project in 1997. Defendant subsequently learned that Bingham-McCann had actually spent approximately $315,000 in start-up

---

[3] Corrie's charitable deduction was ultimately allowed.

costs to the theater project in 1997, so he filed an amended 1997 tax return increasing his charitable deduction to approximately $150,000 based on this new figure.  Defendant testified that he believed all the funds expended by Bingham-McCann for the project's start-up costs were donations for the charitable purpose of creating a children's theater.

On October 24, 2001, Lovelady contacted Franchise Tax Board [FTB] Special Agent Kim Jackson (Jackson) seeking assistance with his investigation.  Jackson determined that Bingham did not own title to the house at 500 La Gonda Way in 1997 and therefore could not have made the $250,000 charitable donation as claimed.  She also concluded that defendant's charitable deduction was not allowable since BTC had reported public contributions of only $10,581 for the 1997 tax year.

Criminal charges were subsequently filed against defendant and Bingham, with the indictment against defendant alleging five felony counts: (1) embezzlement (Pen. Code, § 504); (2) grand theft of real property (Pen. Code, § 487(a)); (3) embezzlement (Pen. Code, § 504); (4) aiding the filing of a false tax return (Rev. & Tax. Code, § 19705(a)(2)); and (5) filing a false tax return (Rev. & Tax. Code, § 19705(a)(1)).

Around this same time, Bingham was diagnosed with a terminal illness and underwent a series of bone marrow treatments.  On March 6, 2002, Bingham pleaded guilty to a misdemeanor violation of Revenue and Taxation Code section 19706 (tax evasion by a corporate officer).  In exchange for his plea, he gave a sworn statement (the Bingham Plea Statement) implicating defendant in numerous wrong-doings associated with the 500 La Gonda Way development project.  As to the issue of Bingham's claimed $250,000 charitable deduction, Bingham testified that defendant approached him and said he could help Bingham tax-wise.  Defendant explained that the transaction would involve Bingham purchasing the house from Bingham-McCann, donating the house to BTC, taking a $250,000 charitable contribution deduction, and later getting the money back.  According to Bingham, defendant stated that Bingham did not have to do anything that defendant would "do it all."  Bingham stated that he inquired of defendant whether the transaction was legal, to which defendant responded, "Yes, people do it all the time."

On May 1, 2003, defendant entered into a "Slow Plea Disposition Agreement, Waiver of Jury Trial, [and] Court Trial to Determine Whether the Offense is a Felony or Misdemeanor" (the Agreement).  The Agreement was five pages long and signed by defendant, his attorney, and the special deputy attorney general prosecuting the case.  As to Count 5 for filing a false tax return (erroneously referred to in the Agreement as Count 6), defendant agreed that at the conclusion of a contested hearing before the court, he would be found guilty of either felony tax fraud as alleged in Count 5 in violation of Revenue and Taxation Code section 19705(a)(1) or of the stipulated lesser included misdemeanor offense in violation of Revenue and Taxation Code section 19701.  All other charges against defendant would be dropped.  Defendant also agreed that if convicted on the felony charge, he faced a maximum sentence of one year in county jail, a fine of $ 50,000, and five

years felony probation.  If convicted of a misdemeanor, defendant could be sentenced to up to one year in county jail, fined up to $ 5,000, and placed on misdemeanor probation.

Other portions of the Agreement are particularly germane to certain of the issues raised by defendant here, including the following:

-- The Agreement provided "that the Court may consider evidence on all presently charged counts and enhancements, as alleged in the Information, [in] determining whether the offense is a felony or a misdemeanor."

-- The Agreement provided that, "Before the commencement of Court Trial, the defendant will execute a written Boykin-Tahl form in which he is advised of his Constitutional rights regarding the right of jury trial, the right against self incrimination and the right to confront witnesses. Having been advised of these rights, he will waive each right and indicate the waiver by signing the Boykin-Tahl form."

-- The Agreement identified certain items of evidence that the parties stipulated would be admissible for purposes of the slow plea hearing, including the "Transcript of proceedings, Gordon Bingham, in a guilty plea, before the Honorable Thomas M. Maddock, March 6, 2002, Department 16, Contra Costa County Superior Court."[4]

On March 15, 2005, the court approved the Agreement, agreed to abide by its terms, and began the trial, which concluded on April 7, 2005.  The trial court found defendant guilty of the felony charge of filing a false tax return in violation of Revenue and Taxation Code section 19705(a)(1). In support of its verdict, the court "credited the testimony the testimony of Edward Belasco, Sidney Corrie, Ward Pynn, and the bulk of the prosecution's witnesses over that of Mr. McCann."  The court opined that it believed defendant "sincerely wanted to develop a theater for the children . . . and that that was a very large part of his motivation for the activities in this case."  The court also expressed its belief, however, that defendant "found that he could at the same time as providing a theater for the community, provide a profit for the Bingham-McCann partnership through the building of the office building, and either the rental or sale of that property."  The court found that the evidence showed "that the transfer of the undivided portion, proportionate interest of 58.3 percent of 500 La Gonda from the Belasco Theater Company to the Bingham-McCann Company was a fraudulent transfer, it was not in exchange for adequate consideration, and in arranging for that transfer Mr. McCann violated his [fiduciary] duty to the Belasco Theater Company as its president and director, and that transfer was a blatant conflict of interest in Mr. McCann's various roles in the transaction." The court also credited the Bingham Plea Statement wherein Bingham stated that defendant "advised him and assisted him in fraudulently

---

[4] Bingham died in December 2003 and was thus unavailable to testify at defendant's trial.

6

claiming a $250,000 tax deduction in 1997." The court acknowledged that the charge of aiding and abetting the filing of a false tax return was not before it, but cited the Bingham Plea Statement as supporting its conclusion that defendant did not believe, and could not have believed in good faith, that he had made a deductible $150,000 charitable contribution to BTC in 1997.

On May 13, 2005, the court sentenced defendant to five years probation and 180 days in county jail, with eligibility for the sheriff's parole program. The court also ordered defendant to pay a restitution fine of $10,000 and restitution to the FTB of $31,843.50.

Ex. F, *People v. McCann*, 2006 WL 1382452 (Cal. Ct. App. May 22, 2006), at *1-8.

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As summarized by the Ninth Circuit: "A

7

state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision.  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision.  *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  *Id*.

If the state court decision only considered state law, the federal court must ask

8

whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *see, e.g., Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232.

Petitioner has raised three claims for federal habeas relief: (1) the trial court improperly admitted the plea statement of his business partner Gordon Bingham in violation of Petitioner's confrontation rights; (2) the trial court violated Petitioner's due process by admitting collateral evidence; and (3) the trial court violated Petitioner's due process by permitting Special Agent Kim Jackson to testify as an expert.

## DISCUSSION

### 1.    Admission of Bingham's Plea

Petitioner claims the trial court violated his confrontation rights by admitting the statement of Gordon Bingham made at his guilty plea. Specifically, Petitioner contends that his Sixth Amendment right to confront witnesses against him was violated when the transcript of Gordon Bingham's guilty plea, dated March 6, 2002, was admitted into evidence and relied on for the truth of the matter asserted during Petitioner's slow plea trial by stipulation of the parties. Respondent argues that Petitioner's claim is procedurally defaulted because it was resolved on adequate and independent state law grounds on appeal in the state courts and that the introduction of this evidence did not violate Petitioner's constitutional rights.

### A.    The Slow Plea Agreement

Bingham's statement was admitted on the basis of the stipulation of the parties

in the "slow plea agreement."[5]  According to the terms of the slow plea agreement, Petitioner would be found guilty of violating the California Revenue and Taxation Code.  Clerk's Transcript ("CT") at 26.  At the conclusion of the presentation of evidence, the court would find Petitioner guilty of either a felony or the lesser included misdemeanor offense.  CT at 26.  The agreement permitted the court to consider evidence on all six counts alleged in the Information to determine whether Petitioner committed a felony or misdemeanor.  CT at 26-27.  Furthermore, in the slow plea agreement, the parties stipulated to the admission of certain evidence, including the guilty plea of Gordon Bingham.  CT at 35-36.  The stipulation contains no limitation on the trial court's use of the admitted evidence.  *Id.*

## B.    Procedural Default

Respondent first argues that procedural default bars this Court's consideration of the claim regarding the admission of Bingham's statement because it was not contemporaneously objected to at trial and the claim was explicitly rejected by the state court of appeal on that ground.

The Court of Appeal found that:

> the record is devoid of any indication that defendant objected at trial to the admissibility of the Bingham Plea Statement. It is well established "that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal." (cases cited) This alone is dispositive.
>
> [. . .]
>
> Additionally, when discussing the numbering and admissibility of the

_____

[5] Under California law, "a 'slow plea,' or slow plea of guilty, is an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment."  *Boyde v. Brown*, 404 F.3d 1159, 1164 n.5 (9th Cir. 2005).  In this case, it was submitted to the court, sitting without a jury, on the basis of an agreement signed by all parties and filed with the court on May 1, 2003.  Ex. A at 32-36.

> People's exhibits, the prosecutor represented with respect to the transcript of the Bingham Plea Statement, "Pursuant to the slow plea agreement it is deemed admissible by stipulation." The court then inquired into defense counsel's position on this, who concurred: "I believe that we stipulated to it." The court acknowledged the stipulation at another point in the proceedings when it stated, "And I will read the police statement that is admitted by admission of the parties, Exhibit 33." The court later stated, "I have reviewed the Exhibit 33, which is admitted by stipulation. That is the plea allocution by Gordon Bingham." These statements by the court did not elicit an objection by defendant's counsel, nor did defense counsel seek to confirm that the Bingham Plea Statement was not being admitted for the truth of the matters asserted.

Ex. F. at 9-10.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal ground and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The existence of a state procedural bar will not by itself foreclose this Court's jurisdiction; the state court decision must have relied on the procedural bar independent of federal law. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Ulster County Court v. Allen*, 442 U.S. 140, 152-54 (1979). This Court will not assume that the state court decision rests on adequate and independent state grounds when the "state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983).

To be "adequate" the state procedural bar cited must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotations and citation omitted), *cert. denied*, 520 U.S. 1204 (1997). The state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir.), *cert. denied*, 540 U.S. 938 (2003).

Once the state has adequately pled the existence of an independent and

11

adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.*[6]

Here, the California Court of Appeal clearly and expressly foreclosed Petitioner's *Crawford* claim as a result of trial counsel's failure to object to the admission of the statement. Known as the "contemporaneous objection rule" under California law, a failure to object at trial waives an issue on appeal. *See People v. Berryman*, 6 Cal. 4th 1048, 1072, overruled on other grounds, *People v. Hill*, 17 Cal. 4th 800, 823 (1998) (overruling *Berryman* to the extent that *Berryman* required a showing of bad faith to establish prosecutorial misconduct).

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). However, the contemporaneous objection rule has been found to not constitute a clear, consistently applied and well-established rule of state law that precludes federal review of the claim

-----

[6]For an example of *Bennett* in practice, see *Powell v. Lambert*, 357 F.3d 871, 876-800 (9th Cir. 2004) (petitioner's citation to several state court decisions in which state courts decided petitions contrary to the state's announced rule was sufficient to shift the burden back to the state to show that its procedural rule was clear, consistently applied, and well-established at the time petitioner filed his petition; once burden shifted back to state, state failed to meet its burden; state did not identify any case in which the state courts had applied the rule as it was applied in petitioner's case before the rule was applied in petitioner's case). *See also Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004) (finding that the state has met its burden where petitioner failed to "argue or come forward with any evidence" that the procedural rule is not firmly established and regularly followed by the California courts).

12

where an objection has been made but the trial court in its discretion declines to consider it on the merits. *See Melendez v. Pliler*, 288 F.3d 1120, 1126 (9th Cir. 2002). While Petitioner here argues in his amended traverse that there was no failure to object to the admission, his citations from the trial record do not support his argument. Both examples Petitioner cites to in his amended traverse are objections to the admission evidence other than Bingham's plea and in one of Petitioner's examples, his attorney acknowledges that there was a stipulation regarding the admission of the plea transcript. *See,* Reporter's Transcript ("RT") at 535-36. Petitioner has failed to satisfy the burden of establishing the inadequacy of the procedural bar. Thus, this Court finds that this claim is procedurally barred from federal review, unless Petitioner has demonstrated cause for the default and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1989); *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981) (absent a showing of cause and prejudice, petitioner is barred from raising a claim on federal habeas review where he failed to meet the state's contemporaneous objection rule).

Petitioner has not demonstrated actual prejudice as a result of the alleged violation of federal law or demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. In fact, it is noted that the transcript reflects not only defense counsel's acknowledgment of the stipulation but also reflects that Petitioner was permitted to introduce other hearsay statements made by deceased witness Bingham to provide evidence of Bingham's state of mind at the time he made his March 6, 2002 guilty plea. Reporter's Transcript ("RT") at 712, 715.

Because Petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice, he fails to meet the burden required to overcome this procedural bar to federal review. *See Coleman*, 501 U.S. at 750.

13

C.      Waiver of *Crawford*

The Court of Appeal also held that Petitioner waived his right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004).  First, the Court of Appeal noted that "the Agreement itself unambiguously provide[d] for the admissibility of the Bingham Plea Statement" Ex. F at 9.  Then, without addressing whether Bingham's statement actually violated *Crawford*, the Court of Appeal found that:

> neither *Crawford* nor any other authority cited by defendant suggests that a defendant cannot waive the right to confront witnesses once he has proceeded to trial.  Nor does defendant cite any authority proscribing the method by which any such waiver may occur.  Surely, defense counsel can waive the right to cross-examine a witness as a trial strategy, and this waiver can be made without defendant's consent.  (*See People v. Adams*, 6 Cal.4th 570, 578 (1993) ["Evidentiary stipulations have long been recognized as tactical trial decisions which counsel has discretion to make without the express authority of the client."].)  Here, defendant stipulated both in writing and orally to the admissibility of the Bingham Plea Statement without limitations on the purpose of its admission.  In so doing, he effectively waived any *Crawford* prohibition against its use.

Ex. F. at 10-11.

The Court of Appeal also noted that in his Petition for Rehearing, Petitioner admitted that the slow plea agreement, by its express terms, placed no constitutional limitations on the admissibility of Gordon Bingham's plea statement.  See, Ex. G at 1. Appellate counsel argues in the petition that the agreement was drafted and executed in 2003 before the Supreme Court's decision in *Crawford*, and that in the stipulation, Petitioner could not have prospectively waived his rights under that subsequent Supreme Court decision.

A waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  Some constitutional rights are automatically waived by entering an unconditional guilty plea.  Such rights include, among others, the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

14

Ordinarily, a defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. *See Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (same); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to attempt to prevent the use of his confession as pre-plea constitutional violation); *see also Hudson v. Moran*, 760 F.2d 1027, 1030 (9th Cir.) (finding no constitutional violation where defendant was not informed that guilty plea would foreclose subsequent habeas relief), *cert. denied*, 474 U.S. 981 (1985).

A defendant who pleads guilty may not collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of competent counsel. *United States v. Broce*, 488 U.S. 563, 574 (1989); *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Nor may he collaterally attack his plea's validity merely because he believes he made what turned out, in retrospect, to be a poor deal. *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Since a slow plea amounts to the functional equivalent of a guilty plea, *see People v. Wright*, 43 Cal. 3d 487, 496 (1987), due process requires that a guilty plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). A guilty plea not made voluntarily and knowingly violates due process. *Id.* It does not, however, require a state court to enumerate all the rights a defendant waives when he

15

enters a guilty plea as long as the record indicates that the plea was entered voluntarily and understandingly.  *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986), *cert. denied*, 479 U.S. 1057 (1987); *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974). A plea is not knowing and voluntary unless it is "entered by one fully aware of the direct consequences" of the plea.  *Brady v. United States*, 397 U.S. 742, 754-55 (1970).  *Boykin*'s presumption of invalidity does not extend to collateral challenges, however.  *See Parke v. Raley*, 506 U.S. 20, 29-30 (1992).  To raise such a claim, a habeas petitioner bears the burden of establishing that his guilty plea was not knowing and voluntary.  *See id.* at 31-34.

        Here, the slow plea agreement required the Petitioner to complete a personal waiver of his constitutional rights to a jury trial, self-incrimination and confrontation, i.e., a *Boykin-Tahl* waiver.[7]  *See*, *Boykin*, 395 U.S. 238, *In Re Tahl*, 1 Cal.3d. 122 (1969).  Petitioner signed the Slow Plea Agreement.  CT at 36.  Notes from a pre-trial review states that the "attorney general [took] defendant's Boykin/Tahl waiver" on September 26, 2003.  CT at 66.  The record also reflects Petitioner's acknowledgment of waiving his rights.[8]  Further, Petitioner does not argue that he did not waive these

---

        [7]  "Before the commencement of Court Trial, the defendant will execute a written Boykin-Tahl form in which he is advised of his Constitutional rights regarding the right of jury trial, the right against self incrimination and the right to confront witnesses.  Having been advised of these rights, he will waive each right and indicate the waiver by signing the Boykin-Tahl form."

Clerk's Transcript ("CT") at 33

        [8]  The Court:  The record will reflect that the matter has been referred to me for trial [. . .] pursuant to a [. . .] slow plea disposition agreement filed May 1st, 2003.  That plea contains a certain series of waivers and advisements of the defendant, but that should be clearly stated for the record. [. . .]

        The Court:  Okay.  Mr. McCann, I assume you have received, and I know you have signed the slow plea disposition agreement prior to its filing more – almost a year ago; is that correct?

16

rights, although he states that certain exculpatory evidence that was unknown to him would have affected his decision to plead guilty.  Although this claim does not appear to have been exhausted in the state courts and properly raised here, the government is not constitutionally required to disclose material impeachment evidence to the defendant under *Brady v. Maryland*, 373 U.S. 83 (1963), prior to entering a plea agreement.  *United States v. Ruiz*, 536 U.S. 622, 631-32 (U.S. 2002).  "Impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary." *Id* at 629.

Further, while Petitioner may have signed the slow plea agreement in 2003, before the *Crawford* decision, it was accepted by the trial court and entered into as a guilty plea at Petitioner's trial in 2005, after that decision and also long after witness Bingham had died, a fact of which Petitioner was aware.  Petitioner has not established that the Court of Appeal's finding that Petitioner had waived his confrontation rights in stipulating to admission of Bingham's plea resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the record before

---

The Defendant:  I did in fact receive it and I did in fact sign it, your Honor.

The Court:  Did you have sufficient time to review it, consult with your attorneys and understand the terms of the agreement?

The Defendant:  I did indeed, your Honor.

The Court:  And you do wish to adopt the terms of that agreement and have the Court adopt these terms?

The Defendant:  Indeed, your Honor.

RT at 18-20.

17

the Court of Appeal.  Therefore, Petitioner is not entitled to relief on this claim.

## 2.    Claims 2 and 3 in Amended Petition

### A.    Exhaustion

After review of the filings, it is apparent that Petitioner has failed to exhaust his state court remedies because he did not raise claims 2 and 3 in the amended petition in his petition for review to the California Supreme Court, nor did he pursue his claim by way of state collateral review.  Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988).  The state's highest court must be given an opportunity to rule on the claims even if review is discretionary.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner must invoke "one complete round of the State's established appellate review process.").

Here, Petitioner raised these claims before the California Court of Appeal but did not raise them the California Supreme Court.  However, the court may deny a petition on the merits even if it is unexhausted, *see* 28 U.S.C. § 2254(b)(2), but it may do so only when a petitioner does not raise a colorable federal claim. *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).  This Court will deny these claims on the merits for the reasons discussed below.

### B.    Admission of Collateral Evidence

Petitioner alleges that the admission of "excessive collateral evidence" of his business venture at 500 La Gonda Way violated his federal due process rights.  During

his court trial, Petitioner filed a motion raising this claim, arguing that an "overwhelming majority of evidence presented . . . was "wholly unrelated and/or collateral to a finding of a felony or misdemeanor tax count."  CT at 330.

On direct appeal, the Court of Appeal found that:

> defendant "stipulated that the Court may consider evidence on all presently charged counts and enhancements, as alleged in the Information, [in] determining whether the offense is a felony or a misdemeanor."  Defendant acknowledges the existence of this stipulation, but attempts to avoid its effect by arguing that the Agreement also provided that "all charged counts and enhancements in the information including counts and enhancements to be dismissed, may be considered for purpose of sentencing pursuant to *People v. Harvey*, 25 Cal.3d 754 (1979)."  He contends that "defense counsel's reasonable understanding of these provisions was that evidence pertaining solely to the La Gonda transaction could be considered in sentencing McCann, but not in determining the degree of his guilt unless directly related to the filing of the 1997 amended return."  This argument is unavailing, as the unambiguous language of the Agreement makes clear that the court could consider the evidence in determining whether defendant was guilty of a felony or misdemeanor.  Thus, even assuming defendant were correct that the court heard "days and days" of what he calls "prejudicial" and irrelevant evidence-which is by no means demonstrated by defendant-he must live with the consequences of his stipulation.

Ex. F at 12-13.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Petitioner has not shown that a specific federal constitutional guarantee was

violated, but rather argues that his conviction was based "on an unreasonable determination of the facts in light of evidence presented."  Petitioner's Traverse at 2, docket no. 11.  In his traverse, Petitioner objects to testimony regarding the allegation made by Corrie that Petitioner "stole" land from BTC.  *Id.*  Yet, Petitioner is unable to show how admission of evidence of the La Gonda transaction was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  More importantly, as the Court of Appeal found, the evidence was admitted pursuant to a stipulated agreement, which clearly stated that the trial court was permitted to consider all evidence relevant to all of the crimes charged in the Information.

As discussed above with regard to Claim 1 in the amended petition, Petitioner plead guilty to the charges in the slow plea agreement and stipulated to the admission of evidence relevant to all the charges against him.   Petitioner has not established that his waiver in the stipulation of his rights to challenge the admission of these items of evidence was unconstitutional, *Johnson*, 304 U.S. at 464 nor has he established the propriety of a collateral challenge on a proper basis subsequent to his guilty plea.  *Broce*, 488 U.S. at 574.  Petitioner has not met his burden of showing that the Court of Appeal's adjudication of petitioner's collateral evidence claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the record before the Court of Appeal.  Petitioner fails to establish a colorable challenge to the admission of this evidence by stipulation on his slow guilty plea.

### C.      Admission of Agent Jackson's Expert Testimony

Petitioner further claims that the trial court erred in admitting the testimony of Franchise Tax Board Special Agent Kim Jackson regarding Petitioner's intent.  Respondent argues that Agent Jackson's testimony was relevant to the trial court's

1    determination at the slow guilty plea trial.  The Court of Appeal found that:

2          Special Agent Jackson. Jackson, who was qualified as an expert on
     Revenue and Taxation Code sections 19705(a)(1), (a)(2) and 19701,
3    testified over defense objection as to her investigation into the 1997
     charitable donation deductions claimed by Bingham and defendant.  She
4    testified that, in light of her investigation, she concluded their deductions
     were not allowable, that there was a possibility of criminal liability under
5    Revenue and Taxation Code section 19705, and that she forwarded a
     report to the Alameda County District Attorney's Office in which she
6    recommended an investigation of criminal tax evasion charges.

7          Defendant does not contest Jackson's qualification as an expert witness.
     Rather, he contends that her testimony was irrelevant to the limited
8    question in the trial, namely defendant's intent in claiming the $ 150,000
     charitable contribution deduction.  Defendant submits Jackson's
9    conclusion that his $150,000 deduction was not allowable was not helpful
     to the court, because "the court could readily have determined on its own
10   whether the $150,000 deduction represented direct cash contributions to
     the Belasco Theater."  He also contends that Jackson's testimony
11   regarding her report and recommendation to the Alameda County District
     Attorney's Office that it pursue a criminal tax investigation against
12   defendant was irrelevant, characterized by defendant as "unhelpful,
     cumulative and time-consuming."

13
           We disagree, and conclude that the trial court did not abuse its discretion
14   in admitting Jackson's testimony.  Defendant is correct that the ultimate
     issue to be decided by the court was whether defendant intended to file a
15   false tax return.  However, this question was not tried in a vacuum.
     Rather, a certain amount of background evidence was appropriate to
16   provide the court with the context in which defendant filed the return,
     manifest, for example, by defendant's recognition that "some of the
17   evidence related to the [La Gonda] transaction would have been
     admissible in any event, as necessary background."  Likewise, Jackson's
18   testimony, in which she explained the deduction claimed by defendant
     and the basis for her determination that the deduction was improper,
19   constituted background information for the trial court's understanding of
     defendant's claimed charitable deduction.

20

21   Ex. F at 13-14.

22        This Court must determine whether the admission of the expert testimony

23   violated petitioner's federal constitutional rights.  *See Estelle v. McGuire*, 502 U.S. 62,

24   67-68 (1991); *Jammal*, 926 F.2d at 919.  A state court's evidentiary ruling is grounds

25   for federal habeas relief only if the ruling renders the state proceedings so

26   fundamentally unfair as to violate due process.  *See Reiger v. Christensen*, 789 F.2d

27

28                                           21

1425, 1430 (9th Cir. 1986) (stating that the dispositive issue is whether the trial court committed an error which rendered the trial so fundamentally unfair that it violated federal due process). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). As long as a permissible inference can be drawn from the challenged evidence, its admission does not rise to the level of a constitutional violation. *See Jammal*, 926 F.2d at 920. Only if no permissible inference may be drawn from the evidence can its admission violate due process. *Id.* Even then, the evidence must "'be of such quality as necessarily prevents a fair trial.'" *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).

This Court concludes that the admission of Agent Jackson's testimony did not violate Petitioner's due process rights. Agent Jackson's testified that Petitioner's claimed deduction was inaccurate. RT at 794, 799, 806, 812-814. The original return showed a deduction of $76,599 and the amended deduction listed $150,324, while BTC only reported contributions of $10,581 in the same tax year. RT at 775, 791, 802, 820. That Petitioner amended his tax return with a higher claimed deduction was relevant to prove intent. From this testimony, the trial judge could have drawn the permissible inference that Petitioner intended to commit the crime of filing a false tax return because Petitioner's amended return claimed a higher deduction than previously reported.

Nor is Petitioner entitled to relief on his claim that Agent Jackson improperly testified on the "ultimate issue" of Petitioner's mental state. As the Ninth Circuit recently stated in *Briceno v. Scribner*, "there is no clearly established constitutional right to be free of an expert opinion on an ultimate issue." 555 F.3d 1069, 1078 (9th Cir. 2009). "Although '[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence . . . . an expert may otherwise testify regarding even an

ultimate issue to be resolved by the trier of fact.'" *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009) (quoting *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990)). In fact, it was Petitioner's counsel that questioned Agent Jackson regarding the issue of specific intent.  RT at 898.  Petitioner has not established a colorable claim and is, therefore, not entitled to relief on his claim regarding the admission of this witness' testimony.

## MOTION TO STRIKE OR FOR ENTRY OF DEFAULT

Petitioner's second motion seeking this relief is DENIED (docket no. 20) for the same reasons set forth in this Court's order of September 30, 2009 denying the earlier motion (docket no. 15).  Further, Petitioner has failed to establish in this motion entitlement to the requested relief and was able to file a supplemental traverse prior to this Court's consideration of the case on the merits.

## CONCLUSION

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  June 10, 2010

_____
JEFFREY S. WHITE
United States District Judge

23

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM D. MCCANN,

        Plaintiff,

  v.

ATTORNEY GENERAL OF THE STATE OF CALIFORNIA et al,

        Defendant.

_____/

Case Number: CV07-03865 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 10, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

William D. McCann
P.O. Box 370
Genoa, NV 89411

Dated: June 10, 2010

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk